PROCTOR & GAMBLE DISTRIBUTING CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83–04–00618

(Decided June 24, 1987)

*Sandler & Travis (Gilbert Lee Sandler)* and *Proctor & Gamble Company (Madeline L. Shay),* for plaintiff.

*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Civil Division, United States Department of Justice, for defendant.

OPINION

RESTANI, *Judge:* This matter is before the court for decision following post-trial briefing. The imported article at issue is Luvs Disposable Diapers. The Customs Service has determined that all components of the diapers, but one, are entitled to duty-free treatment as articles of the United States, assembled abroad and returned, under item 807, Tariff Schedules of the United States (TSUS) (1981). The issue before the court is whether the remaining component, the inner absorbent core of the diaper, is entitled to duty-free treatment, as well.[1]

Item 807 is the only tariff provision relevant to this dispute. It reads as follows:

> Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting * * *. A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart)

FACTS

The record reveals the following. The absorbent core material is exported in a form called "dry lap." Dry lap is transported in large compact rolls suitable for shipping and for the "assembly" process at issue. Dry lap is itself a fabricated component, consisting of a chemically prepared, clean, dry form of wood pulp. The process of producing dry lap from trees is a long and complicated one, which need not be explained here.

The dry lap becomes part of the diaper through a multi-step process which separates the dry lap fibers creating air spaces between the fibers, giving the material its high absorbency characteristic. The absorbent core material is then formed into the appropriate diaper shape and joined with the other diaper components.[2]

DISCUSSION

Item 807 contains three parts, each of which must be satisfied before a component qualifies for duty-free treatment.

---

[1]There is no dispute that but for item 807 the diapers would be dutiable under item 256.70, as articles of pulp at 3.8% ad valorem.

[2]Description of the details of the process would reveal confidential information. The transcript of the trial and video tape evidence amply depict the process.

The first part requires that a fabricated component be exported in condition ready for assembly without further fabrication. The dry lap was clearly fabricated. The issue is whether it was "further fabricated" before it was assembled with the other diaper components. The meaning of the words "further fabricated" has been explained in several cases, notably *E. Dillingham, Inc.* v. *United States,* 60 CCPA 39, 470 F.2d 629 (1972); three cases entitled *General Instrument Corp.* v. *United States,* 59 CCPA 171, 462 F.2d 1156 (1972); 60 CCPA 178, 480 F.2d 1402 (1973); and 61 CCPA 86, 499 F.2d 1318 (1974); *United States* v. *Texas Instruments, Inc.,* 64 CCPA 24, 545 F.2d 739 (1976); *Rudolf Miles* v. *United States,* 65 CCPA 32 (1978); *Zwicker Knitting Mills* v. *United States,* 67 CCPA 37, 613 F.2d 295 (1980) and *United States* v. *Mast Indus., Inc.,* 69 CCPA 47, 668 F.2d 501 (1981).

Summarizing, the court notes that the opening, oiling and carding of fibers is "further fabrication" (*Dillingham,* 60 CCPA at 40, 470 F.2d at 633); stitching to close glove fingers is "further fabrication" (*Zwicker,* 67 CCPA at 41, 613 F.2d at 297); cutting to length, despooling, winding, taping and cementing wire is *not* "further fabrication"; cutting to length and trimming foil and tape is *not* "further fabrication" (*General Instrument,* 59 CCPA at 177, 462 F.2d at 1160; 60 CCPA at 183–84, 480 F.2d at 1406; 61 CCPA at 89, 499 F.2d at 1320–21); cutting silicon chips along premarked "streets" is *not* "further fabrication" (*Texas Instruments,* 64 CCPA at 30, 545 F.2d at 744); burning slots and holes in Z-beams is not "further fabrication" (*Rudolph Miles,* 65 CCPA at 37), buttonholing and slitting pants pockets is *not* "further fabrication" (*Mast Indus.,* 69 CCPA at 52, 668 F.2d at 505). In addition, the *Dillingham* court found that needling of felt base for the insertion of fibers was an assembly process, which would seem to preclude its being "further fabrication."

Although the courts hesitate to generalize across products, it appears likely that hole punching necessary to joining, as with Z-beams and felt base, is not further fabrication, nor is pre-patterned cutting or trimming. The sewing and knitting cases seem to indicate that such operations are fabrication only if they create the basic article. (No sewing or knitting was involved here.) It appears to the court that the process of creating the diaper core from the dry lap is more than just hole punching or needling for joining. First, it is the creating of air spaces, which are analogous to holes, that gives the material its most important characteristic—high absorbency. Next, the process also creates the basic diaper shape from a roll of dry lap. This is not equivalent to despooling wire and cutting it to length. It is rather like the process of creating the wire from other forms of metal. It appears, based on these cases, that the dry lap was "further fabricated" prior to assembly.

As the foregoing issue is not entirely clear-cut it seems prudent to examine the second requirement of item 807. The *Dillingham* case, in its discussion of felt base, states that form changes only affect duty status under item 807 if they cause the article to lose its physical identity. 60 CCPA at 46; 470 F.2d at 635. Certainly it is possible to tell that the diaper core is made from the dry lap—that fact is never obscured—but the compact dry lap in roll form in no way resembles the fluffed, fully formed diaper core. This is not simply cutting lengths from the dry lap, it is the making of a new article. Thus, the second criterion for duty-free treatment under item 807 is not met.

The final criterion appears irrelevant. The dry lap is not so much advanced in value or improved in condition as it is advanced in the manufacturing process toward a completed diaper. The process described in no way resembles incidental cleaning or lubricating.

Looking at item 807 as a whole, and at the process as a whole, it appears to the court that the creation of the diaper core is not merely an assembly process, a process incidental to assembly or some other minor activity; rather, it involves substantial fabrication and changes in physical characteristics which give the finished product its essential feature.

The court's analysis necessarily rejects plaintiff's main argument, that is, that the individual fibers are the components, not the dry lap. The court rejects this concept based on the *Dillingham* decision's discussion of fiber. The court there stated, in response to the essentially identical argument, "We believe that the fiber must be considered to be a component in the bulk, baled form, *en masse,* in which it left the United States." 60 CCPA at 43; 470 F.2d at 633. In this case the testimony indicated that the fibers are always handled in the aggregate and never individually. The dry lap rolls, not the individual fibers, are the exported product. The diaper core with its fiber matrix and air spaces is the component to be assembled, not the individual fibers.

Plaintiff has failed to establish that the diaper core is entitled to duty-free treatment under item 807 and defendant has demonstrated that its classification decision was correct. Judgment is to be entered for defendant.